IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

PLANNED PARENTHOOD OF KANSAS )
AND MID-MISSOURI INC., )
                                    )
           Plaintiff, )
                                    )
vs. ) Case NO. 07-4164-CV-C-ODS
                                    )
JANE DRUMMOND, JAY NIXON, )
DANIEL KNIGHT, and JAMES F KANATZAR, )
                                    )
                                    )
          Defendants. )

## ORDER AND OPINION GRANTING TEMPORARY RESTRAINING ORDER

       Pending is Plaintiff's Motion for Preliminary Injunction and For Expedited Briefing and Hearing on that Motion, or for a Temporary Restraining Order (Doc. #2). For following reasons, Plaintiff's Motion for a Temporary Restraining Order is GRANTED.

## I. BACKGROUND

       Missouri's Ambulatory Surgical Center Licensing Law ("the Act"), codified at section 197.200 of the Revised Missouri Statutes, was amended this year with the amendments to go into effect on August 28, 2007. Formerly, the Act defined an ambulatory surgical center as any "establishment operated primarily for the purpose of performing surgical procedures or primarily for the purpose of performing childbirths and which does not provide . . . accommodations for patients to stay more than twenty-three hours . . . ." As amended, the definition will be changed to include any establishment that performs five or more first trimester abortions per month or any second or third trimester abortions.

       Ambulatory surgical centers ("Surgi-Centers") must comply with health and safety regulations promulgated by the Missouri Department of Health and Senior Services ("DHSS"). When the regulations have been changed in the past, DHHS has

grandfathered existing facilities and required them to comply with the previous regulations unless and until new construction occurred.  Thus, the regulations typically create two "tiers:" one for facilities that are newly constructed or that undergo new construction or renovation, and one for facilities that were in compliance before the regulations were changed.

Plaintiff provides first-trimester abortions at two locations in Missouri: the Brous Center in Kansas City and the Columbia Center in Columbia.  The Brous Center formerly provided surgical abortions from 1975 to 1998 and has been providing non-surgical abortions via medication since 2005.  Medication abortion is an FDA-approved method for terminating a pregnancy with oral medication.  The medicine is administered in two stages.  The first stage takes place at the Brous Center, and the patient self-administers the second stage at her home.  In July 2007, Plaintiff sought clarification from DHSS that the Brous Center is not required to be licensed under the Act, as it does not perform surgical procedures.  However, DHSS determined the Brous Center meets the definition of a Surgi-Center and will be required to satisfy the regulatory requirements.  On August 9, 2007, Plaintiff requested a waiver from the regulation's requirements, which was subsequently denied.

The Columbia Center provides abortions by surgical methods (as well as medication abortions) through the first trimester of pregnancy.  The Columbia Center began providing abortions in 1975, with a break in abortion services between 1999 and 2002.  The Columbia Center's abortion and related services account for under 51% of its patients and revenues, so it does not "operate *primarily* for the purpose of providing surgical procedures" and has not been required to comply with the Act.  In July 2007 Plaintiff sought licensure from DHSS, stating it was willing to comply with the physical requirements for pre-existing facilities.  DHSS determined (1) Columbia Center was required to comply with the regulations for new facilities, not pre-existing facilities, and (2) Columbia Center did not satisfy these regulations.  The Columbia Center subsequently requested these requirements be waived and has not received a response.

## II. DISCUSSION

Plaintiff claims the 2007 Amendment was enacted in order to eliminate, or make more difficult, access to abortion in Missouri and requests that the Court issue a temporary restraining order enjoining application of the Act against Plaintiff pending the determination of Plaintiff's Motion for Preliminary Injunction. Defendants justify the Act, and application of the regulations to Plaintiff, based on the State's interest in insuring the health and safety of women. In determining whether a plaintiff should be granted a temporary restraining order, this Court must weigh "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

### A. Standing

Defendants first contend Plaintiff lacks standing to pursue its claim of undue burden. The Supreme Court has recognized that it is appropriate to allow a physician to assert rights of women patients in abortion cases. Singleton v. Wulff, 428 U.S. 106, 118 (1976). The Court finds Plaintiff will adequately represent its patients constitutional rights and therefore has standing in this instance. Okpalobi v. Foster, 190 F.3d 337, 353 (5th Cir. 1999). In addition, there is no suggestion Plaintiff lacks standing to protect its own interests. Planned Parenthood of Minn. Inc., v. Citizens for Community Action, 558 F.2d 861, 867 (8th Cir. 1977).

### B. Probability of Success on the Merits

The Court finds that Plaintiff has a significant probability of success on the merits. "Before viability, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy. It also may not impose upon this right an undue burden,

3

which exists if a regulation's purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." Gonzales v. Carhart, 127 S. Ct. 1610, 1626-27 (2007) (quotations omitted). Moreover, "the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child." Planned Parenthood v. Casey, 505 U.S. 833, 846 (1992). However, "[r]egulations designed to foster the health of a woman seeking abortion are valid if they do not constitute an undue burden." Id. at 878.

On the present record, the Act's application to the Brous Center appears to be an undue burden. The Brous Center does not perform any surgeries, yet the Act would require the Brous Center to comply with regulations uniquely applicable to establishments that do. On the surface, this does not make a lot of sense. Moreover, Defendants' explanations to date have not been terribly persuasive. For instance, it was suggested that adverse side effects from the medications could necessitate surgery – but then, adverse side effects from many medications could necessitate surgery. Of all the establishments that dispense medication (e.g., doctor's offices, pharmacies), why is it only those that dispense medication for the purpose of inducing an abortion that must be prepared to perform surgery? At this stage of the proceeding, application of the Act to the Brous Center appears to be an undue burden on the right to obtain an abortion through medication.

The Columbia Center's situation is different because it provides surgical abortions. Requiring Columbia Center to comply with regulations governing facilities that perform surgery seems reasonable on the surface. However, there is an issue regarding timing; that is, when must the Columbia Center comply? On this point there is a certain amount of agreement. Dean Linneman, the Section Administrator for DHHS' Division of Regulation and Licensure, has declared that "[c]onsistent with prior practice, [DHHS] will collaborate . . . to establish a timeline and process for complying with the new regulations." Linneman Affidavit, ¶ 6. For its part, Plaintiff has represented that it is also prepared to comply with applicable regulations. Complaint, ¶ 54.

There may be some disagreement over which tier of regulations apply to the Columbia Center. Neither party has addressed this issue with sufficient clarity to allow further analysis of the matter. Based on what has been presented, the Court is not sure this issue is even within the scope of this lawsuit, as it relates not to the statutory change but to an interpretation of regulations that has not been specifically challenged. Regardless, the parties' similar expressions of a desire to insure compliance with the regulations justifies issuing a TRO to maintain the status quo.

Lest too much be read into the Court's ruling, it is appropriate to advise the parties as to the aspects of Plaintiff's claims that are not being accepted at this time. The Court believes the state has a legitimate interest in regulating facilities that perform surgery, even if the facility in question performs surgical abortions. The Court also believes the state may differentiate between facilities that do not primarily perform surgery based on the types of surgery they provide. Of course, regulations governing surgical centers must be applied the same to all surgical centers, regardless of whether they are performing abortions. Defendants' apparent failure to do so to date, coupled with the parties aforementioned willingness to cooperate, justifies the TRO as to the Columbia Center so that further explanation can be provided to the Court.

### C. Irreparable Harm

The Court finds that Plaintiff will suffer irreparable harm if a temporary restraining order is not issued at this time. Plaintiff's showing that the Act will interfere with the exercise of "its constitutional rights and the rights of its patients" constitutes irreparable harm. <u>Planned Parenthood of Minn. Inc. v. Citizens for Cmty. Action</u>, 558 F. 2d 861, 867 (8th Cir. 1977). As of August 28, 2007, both clinics will be essentially required to cease providing abortion services to Missouri patients outside of the St. Louis area. This will affect not only Plaintiff, but also the women who otherwise would seek an abortion (and whose rights the Court has previously held Plaintiff is empowered to assert).

5

### D.  Balance of Harm vs. Injury to Defendant

If this temporary restraining order is not issued, Plaintiff faces the immediate closure of two clinics in Missouri, and its would-be patients face the immediate loss of their ability to obtain abortions.  Defendants will suffer little or no harm if the Act is enjoined.  Both of Plaintiff's clinics have been operating for years without complying with regulations applicable to Surgi-Centers, and the short delay caused by issuance of a TRO will be insignificant.  The economic harm coupled with the harm suffered by patients who are either delayed or prohibited from receiving an abortion outweighs the harm done to Defendants from the delayed application of the new law.

### E.  Public Interest

Defendant contends protecting the health of women is an important public interest.  This interest is outweighed by the public's minimal interest in enforcement of an unconstitutional law.  In addition, the Court is not presently persuaded that applying the Act to the Brous Center actually furthers that interest, and a delay in application to the Columbia Center is consistent with Defendant's past practice of affording other facilities time and opportunity to comply with regulations.

### F.  The Preliminary Injunction Hearing

A TRO is effective for ten days, exclusive of intervening weekends and holidays. Fed. R. Civ. P. 6(a), 65(b).  A preliminary injunction hearing will commence at 9:00 a.m. on September 10, 2007.  Each side will be allotted three hours to present whatever evidence (including via cross-examination) or argument they deem appropriate.  The record already includes the evidence presented during the TRO hearing, so there is no need to recall those witnesses (unless they have new testimony to offer).

The parties shall file briefs by 4:00 p.m. on September 7, 2007.  This Order outlines some of the issues and concerns the parties might want to address.  In

6

addition, the parties are directed to address the following issues:

1. While the Court has preliminarily determined Plaintiff has standing, additional examination of the issue would be prudent. The parties should provide further research regarding Plaintiff's standing, particularly given that neither a doctor nor a woman is involved as a plaintiff.

2. The regulatory issues surrounding the Columbia Center have not been explained very well. Columbia Center provided surgical abortions at various times, but it is not clear whether it remained licensed to provide surgical abortions even when it was not performing them. It is also not clear what regulations apply to it (or have been applied to it) before this date. The implications for regulatory compliance of any lapse in either (1) licensure or (2) the performance of surgeries also has not been explained.

3. Defendants should explain what regulations they expect the Columbia Center to comply with, and why. They should also suggest the timeline and process for compliance referred to in Linneman's affidavit.

4. Plaintiff should explain what regulations it believes the Columbia Center should comply with, and why. (For purposes of this inquiry, Plaintiff should presume the Court decides not to strike the Act as unconstitutional). It should also suggest a timeline and process for compliance.

### III.  CONCLUSION

In light of the foregoing discussion, it is ORDERED that Defendants are temporarily enjoined from enforcing the provisions of section 197.200 et seq. and its attendant regulations as to the two clinics Plaintiff operates in Columbia and Kansas City, Missouri. This temporary injunction shall remain in effect pending further order of the Court or until it expires by operation of law. No bond will be imposed.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: August 27, 2007    UNITED STATES DISTRICT COURT

7

Case 2:07-cv-04164-ODS   Document 26   Filed 08/27/07   Page 7 of 7