IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

PLANNED PARENTHOOD OF KANSAS )
AND MID-MISSOURI INC., et al., )
)
        Plaintiffs, )
)
vs. ) Case NO. 07-4164-CV-C-ODS
)
JANE DRUMMOND, JAY NIXON, )
DANIEL KNIGHT, and JAMES F KANATZAR, )
)
)
        Defendants. )

## ORDER AND OPINION GRANTING DR. ALLEN PALMER'S MOTION TO INTERVENE AND FOR TEMPORARY RESTRAINING ORDER

Pending is Plaintiff's Motion to Intervene and for a Temporary Restraining Order. For the reasons stated on the record, Plaintiff's Motion to Intervene is GRANTED. Plaintiff shall have ten business days to electronically file his complaint. For the following reasons, Plaintiff's Motion for a Temporary Restraining Order is also GRANTED.

## I. BACKGROUND

Missouri's Ambulatory Surgical Center Licensing Law ("the Act"), codified at section 197.200 of the Revised Missouri Statutes, was amended this year with the amendments going into effect on August 28, 2007. Formerly, regulations promulgated pursuant to the Act defined an abortion facility (a subset of ambulatory surgical centers) as a "facility in which the number of patients having abortions represents fifty-one percent (51%) or more of the patients treated or seen for any health condition or where fifty-one percent (51%) or more of the revenues of the facility are from abortion or procedures related to abortions . . . ." As amended, the definition will be changed to include any establishment that performs five or more first trimester abortions per month or any second or third trimester abortions.

Ambulatory surgical centers ("ASC"), including abortion facilities, must comply with health and safety regulations promulgated by the Missouri Department of Health and Senior Services ("DHSS"). When the regulations have been changed in the past, DHSS has grandfathered existing facilities and required them to comply with the previous regulations unless and until new construction occurred. Thus, the regulations typically create two "tiers:" one for facilities that are newly constructed or that undergo new construction or renovation, and one for facilities that were in compliance before the regulations were changed.

Plaintiff has provided first-trimester surgical and non-surgical abortions at the same location in Bridgeton, Missouri, for over thirty years. Until now, he has not been required by the State of Missouri to obtain a license for his private practice, Women's Care Gynecology, Inc. ("WCG"). In the months preceding the effective date of the new regulations, Plaintiff sought clarification from DHSS as to whether he is now required to obtain a license for his private practice, and if so, which aspects of the ASC licensing regulations he must meet. Dean Linneman, DHSS Division of Regulation & Licensure, Section for Health & Licensure section administrator, testifying at Plaintiff's Intervention and TRO hearing on August 31st, clarified the position of DHSS, stating that WCG meets the amended definition of an abortion facility. Additionally, there is some disagreement as to whether WCG should be deemed a new facility or an existing facility, considering the fact that it has been in continuous operation at the same location for thirty years. Finally, Plaintiff sought assurances from DHSS that no enforcement action will be taken against him if he continues to provide abortion services. Mr. Linneman assured the Court that DHSS will work with Plaintiff to develop a reasonable time-line to come into compliance and would not require Plaintiff to immediately cease providing abortions so long as Plaintiff is moving toward compliance in good faith .

## II.  DISCUSSION

Plaintiff claims the 2007 Amendments violate his due process and equal protection rights and requests that the Court issue a temporary restraining order
2

Case 2:07-cv-04164-ODS   Document 38   Filed 09/06/07   Page 2 of 5

Ambulatory surgical centers ("ASC"), including abortion facilities, must comply with health and safety regulations promulgated by the Missouri Department of Health and Senior Services ("DHSS"). When the regulations have been changed in the past, DHSS has grandfathered existing facilities and required them to comply with the previous regulations unless and until new construction occurred. Thus, the regulations typically create two "tiers:" one for facilities that are newly constructed or that undergo new construction or renovation, and one for facilities that were in compliance before the regulations were changed.

Plaintiff has provided first-trimester surgical and non-surgical abortions at the same location in Bridgeton, Missouri, for over thirty years. Until now, he has not been required by the State of Missouri to obtain a license for his private practice, Women's Care Gynecology, Inc. ("WCG"). In the months preceding the effective date of the new regulations, Plaintiff sought clarification from DHSS as to whether he is now required to obtain a license for his private practice, and if so, which aspects of the ASC licensing regulations he must meet. Dean Linneman, DHSS Division of Regulation & Licensure, Section for Health & Licensure section administrator, testifying at Plaintiff's Intervention and TRO hearing on August 31st, clarified the position of DHSS, stating that WCG meets the amended definition of an abortion facility. Additionally, there is some disagreement as to whether WCG should be deemed a new facility or an existing facility, considering the fact that it has been in continuous operation at the same location for thirty years. Finally, Plaintiff sought assurances from DHSS that no enforcement action will be taken against him if he continues to provide abortion services. Mr. Linneman assured the Court that DHSS will work with Plaintiff to develop a reasonable time-line to come into compliance and would not require Plaintiff to immediately cease providing abortions so long as Plaintiff is moving toward compliance in good faith .

## II.  DISCUSSION

Plaintiff claims the 2007 Amendments violate his due process and equal protection rights and requests that the Court issue a temporary restraining order

Case 2:07-cv-04164-ODS   Document 38   Filed 09/06/07   Page 2 of 5

enjoining application of the Act against Plaintiff pending the determination of Plaintiff's Motion for Preliminary Injunction. Defendants justify the Act, and application of the regulations to Plaintiff, based on the State's interest in insuring the health and safety of women. In determining whether a plaintiff should be granted a temporary restraining order, this Court must weigh "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

### A. Irreparable Harm

The Court finds that Plaintiff will suffer irreparable harm if a temporary restraining order is not issued at this time. Plaintiff's showing that the Act will interfere with the exercise of his constitutional rights and the rights of his patients constitutes irreparable harm. Planned Parenthood of Minn. Inc. v. Citizens for Cmty. Action, 558 F. 2d 861, 867 (8th Cir. 1977). Additionally, because Defendants are immune under the Eleventh Amendment from a retroactive award of damages if the Court ultimately finds application of the Act to Plaintiff unconstitutional, any monetary harm suffered by Plaintiff will not be compensable. See Marigold Foods, Inc. v. Redalen, 809 F. Supp. 714, 720 (D. Minn. 1992).

### B. Balance of Harm vs. Injury to Defendant

Defendants will suffer little or no harm if the Act is enjoined. Plaintiff's practice has been operating for years without complying with regulations applicable to abortion facilities, and the short delay caused by issuance of a TRO should not be significant. The economic harm coupled with the harm suffered by patients who are either delayed or prohibited from receiving an abortion outweighs the harm done to Defendants, whose stated willingness to provide Plaintiff with time to come into compliance shows the

3

minimal injury sustained by delaying enforcement of the regulations during the time the TRO is effective.

### C.  Probability of Success on the Merits

Plaintiff argues his due process and equal protection rights are violated by the Act.  That is, there is disagreement over which regulations should apply to Plaintiff; specifically, whether his practice should be treated as a new or existing facility. Additionally, it is currently unclear when the regulations will apply or when Plaintiff could be deemed in noncompliance.  Neither party has addressed this issue with sufficient clarity to allow further analysis of the matter.  The parties' similar expressions of a desire to insure compliance with the regulations justifies issuing a TRO to maintain the status quo.  More importantly, while the constitutionality of the new regulation of surgical abortions cannot be adequately assessed at this time, Plaintiff shows a high probability of success regarding the regulation of medication abortion.  As discussed in the TRO applicable to Planned Parenthood, regulating a non-surgical procedure that results in abortion in the same way as a surgical abortion does not make a lot of sense and has not been adequately explained to the Court.

### D.  Public Interest

Defendant contends protecting the health of women is an important public interest.  This interest is outweighed by the public's minimal interest in enforcement of an unconstitutional law.  Again, the fact that DHSS has expressed a willingness to allow Plaintiff time to come into compliance is evidence that a short delay in enforcement will have little effect on the health of women.

### E.  The Preliminary Injunction Hearing

A TRO is effective for ten days, exclusive of intervening weekends and holidays.

Fed. R. Civ. P. 6(a), 65(b).  A preliminary injunction hearing will commence at 9:00 a.m. on September 10, 2007.  Each side will be allotted three hours to present whatever evidence (including via cross-examination) or argument they deem appropriate.  The record already includes the evidence presented during the TRO hearings, so there is no need to recall those witnesses (unless they have new testimony to offer).

The parties shall file briefs by 4:00 p.m. on September 7, 2007.  This Order outlines some of the issues and concerns the parties might want to address.  In addition, the parties are directed to address the following issues:

1. Defendants should explain what regulations they expect WCG to comply with, and why.  They should also suggest the time-line and process for compliance referred to in Mr. Linneman's affidavit and testimony.

2. Plaintiff should explain what regulations it believes WCG should comply with, and why.  (For purposes of this inquiry, Plaintiff should presume the Court decides not to strike the Act as unconstitutional).  It should also suggest a time-line and process for compliance.

### III.  CONCLUSION

In light of the foregoing discussion, it is ORDERED that Defendants are temporarily enjoined from enforcing the provisions of section 197.200 et seq. and its attendant regulations as to Plaintiff.  This temporary injunction shall remain in effect pending further order of the Court or until it expires by operation of law.  No bond will be imposed.
IT IS SO ORDERED.

DATE: September 6, 2007

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT